*I Luis Torres witnessed lawrence Jackson*
*Send this paperwork oo in prison on 1-11-11*
*Luis Tws #150527   1-11-11*

Name:
Address:
Telephone:

FILED
U.S. DISTRICT COURT

2011 MAY 31  A 11: 51

DISTRICT OF UTAH

BY: *Central* DEPUTY CLERK

RECEIVED CLERK

JAN 14 2011

U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
### Central DIVISION

*Lawrence Marshall Jackson*
(Full Name)
PLAINTIFF

vs.

*Steven Turley, Warden,*
*U.S.P., et al.*

_____

_____

DEFENDANTS

**CIVIL RIGHTS COMPLAINT**
(42 U.S.C §1983, §1985)

Case: 2:11cv00068
Assigned To : Waddoups, Clark
Assign. Date : 1/18/2011
Description: Jackson v. Turley et al.

### A. JURISDICTION

1.   Jurisdiction is proper in this court according to:

      a. X 42 U.S.C. §1983
      b. X 42 U.S.C. §1985
      c. __ Other (Please Specify) _____

2.   NAME OF PLAINTIFF *Lawrence m. Jackson* _____
    IS A CITIZEN OF THE STATE OF *Utah* _____

    PRESENT MAILING ADDRESS: *Oquirrh III-203-B*
*Utah State Prison*
*P.O.Box 250 Draper, Utah 84020*

3.   NAME OF FIRST DEFENDANT *Lisa Soper, R.N., (CUCF)* _____

IS A CITIZEN OF _Gunnison, Utah_
         (City and State)

IS EMPLOYED AS _Registered Nurse_ at _(CUCF)_ .   Central Utah Correctional Facility
    (Position and Title if Any)      (Organization)

    Was the defendant acting under the authority or color of state law at the time these claims occurred?

YES _X_ NO___.  If your answer is "YES" briefly explain.

_Ms. Soper acted under color of state law when she intentionally, and with malice denied petitioner a prescribed dose of insulin; grievous injury, and permanent impairment ensued._

4.    NAME OF SECOND DEFENDANT _Joni J. Jones, Esq._
    (If applicable)

IS A CITIZEN OF _Salt Lake City, Utah_
        (City and State)

IS EMPLOYED AS _Assistant Ut. Attorney General_ at _Utah Attorney General's Office_
    (Position and Title if Any)    (Organization)

Was the defendant acting under the authority or color of state law at the time these claims occurred?

YES _X_ NO___.  If your answer is "YES" briefly explain.

_Ms. Jones violated plaintiffs' constitutional rights under the U.S. constitution Amendment (1st) I; denial of right to petition government for redress of grievances; XIV (due process, and equal protection of the laws clauses)_

5.    NAME OF THIRD DEFENDANT _Wayne A. Freestone, P.C. & David J. Angerhofer, P.C.,_
    (If applicable)

IS A CITIZEN OF _Murray, Utah_
        (City and State)

IS EMPLOYED AS _Contract Attorneys_ at _Utah State Prison_
    (Position and Title if Any)    (Organization)

Was the defendant acting under the authority or color of state law at the time these claims occurred?

YES _X_ NO___. If your answer is "YES" briefly explain.

The Contract Attorneys first maliciously provided the Utah Attorney General's Office with a copy of a Fed R. Civ. Proc. Rule 65A TRO petition intended to be filed ex parte, resulting in the petition being dismissed. Thereafter obtained most of plaintiff's legal papers which allowed them to explore whatever evidence against them.

6. NAME OF FOURTH DEFENDANT Christopher D. Ballard
   (If applicable)

   IS A CITIZEN OF Salt Lake City, Utah
   (city and State)

   IS EMPLOYED AS Assistant Attorney General at Utah Attorney General's Office
   (Position and Title if Any)        (Organization)
   Was the defendant acting under the authority or color of state law at the time these claims occurred?

   YES _X_ NO___. If your answer is "YES" briefly explain.

   Mr. Ballard, having obtained an otherwise ex parte pleading, maliciously and fraudulently commingled it with a pending §2254 Habeas Corpus Petition resulting in the petition being dismissed. He subsequently lied about how he acquired the petition to the U.S. Court of Appeal for the 10th Circuit.

(Use additional sheets of paper if necessary.) See supplimental sheets for additional counts and parties.

## B. NATURE OF CASE

1. Why are you bringing this case to court?  Please explain the circumstances that led to the problem.

   _____

   _____ See Supplimental Sheets. _____

   _____

   _____

## C. CAUSE OF ACTION

1.  I allege that my constitutional rights, privileges or immunities have been violated and that the following facts form the basis for my allegations: (If necessary you may attach additional pages)

    a.  (1)  Count I: U.S. Constitution, Amendments VIII, and XIV, and ADA (1990) violations

        (2)  Supporting Facts: (Describe exactly what each defendant did or did not do. State the facts clearly in your own words without citing legal authority or arguments.)

        See supplimental pages

    b.  (1)  Count II: U.S. Constitution Amendments I, and XIV violated by state government officials

        (2)  Supporting Facts:

        See supplimental sheets

    c.  (1)  Count III:

(2)   Supporting Facts: _____

_____

See Supplimental Sheets

_____

_____

_____

### D. INJURY

1.   How have you been injured by the actions of the defendant(s)?

Plaintiff has recieved physical injury with permanet impairments.

Plaintiff's life expectancy has been substantially reduced because of
uncontrolled diabetes;
Plaintiff has suffered unnecessary pain and suffering for lack of adequate
pain managment, and also from prison officials misuse of restraints;
The defendants defrauded plaintiff of a legal remedy for personal injury
and constitutional rights violations.
Plaintiff has been adversely affected by racial discrimination both in
prison employment, and security status.
Plaintiff has been retaliated against by defendants which has the
effect of the constitutional guarantee of privileges and immunities
and plaintiff has been defrauded out of access to the courts

### E. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1.   Have you filed other lawsuits in state or federal court that deal with the same facts that
are involved in this action or otherwise relate to the conditions of your imprisonment?
YES__X__ / NO _____. If your answer is "YES," describe each lawsuit. (If there is
more than one lawsuit, describe additional lawsuits on additional separate pages, using
the same outline.)

a.      Parties to previous lawsuit:

Plaintiff(s): Lawrence M. Jackson

Defendant(s): State of Utah, et al.,

b.   Name of court and case or docket number: 6th Dist. Ct, sanpete county, Manti, Utah
case # 040600383

c.   Disposition (for example: Was the case dismissed?  Was it appealed?  Is it still pending?)   _Case was dismissed on Summary Judgment_

d.   Issues raised: _Medical malpractice and constitutional Rights_

_violations_

e.   When did you file the lawsuit? _11 - 17 - 04_

          Date        Month        Year

f.   When was it (will it be) decided? _7 - 3 - 07_

2.   Have you previously sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part C? YES_X_ / NO___. If your answer is "YES" briefly describe how relief was sought and the results. If your answer is "NO" explain why administrative relief was not sought.

_Plaintiff filed grievances in the Utah State Prison. The_

_issues were exausted administratively by the level III_

_Grievance Hearing Official, mr. Tom Anderson._

**F. REQUEST FOR RELIEF**

1.   I believe that I am entitled to the following relief:

_Plaintiff is entitled to compensatory damages to be_

_decided by the court; Plaintiff is also entitled to punitive_

_damages for the intentional and malicious acts of the_

_defendants; and any and all damages allowed by law._

## DECLARATION UNDER PENALTY OF PERJURY

     The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint, and that the information contained therein is true and correct.  28 U.S.C. §1746; 18 U.S.C §1621.

Executed at _Draper, Utah_ on _1-11-11_ 20_11_.
Utah state Prison
       (Location)           (Date)


_____
    Signature

## The Parties

1). Ms. Lisa Soper, R.N. at the Central Utah Correctional Facility, (CUCF): Ms. Soper, R.N. acted under the color of state law, and within the scope of her employment when she refused plaintiff's prescribed dose of insulin, and further denied plaintiff access to a health care provider for the purpose of verifying what the prescribed dose of insulin was. The result of which was serious injury and permanent impairment and disfigurement. The acts were intentional and malicious.

2) Unknown Named defendants who while working at the CUCF facility acting under the color of state law, and within the scope of their employment acted with Ms. Lisa Soper, R.N. to deny plaintiff access to a healthcare provider for the purpose of verifying the prescribed amount of insulin until plaintiff suffered debilitating and perjury and permanent impairment and disfigurement. The same unknown defendants prevented plaintiff from obtaining timely access to surgical intervention and because they denied plaintiff the treatment, plaintiff suffered at least (4) four months debilitating and unrelenting pain which culminated into permanent impairment.

3) Defendant, Joni J. Jones, Assistant Utah Attorney General, acted under the color of state law and within the scope of her employment when she either directly, or indirectly violated plaintiff's constitutional rights when she had plaintiff's pleadings removed from the prison mail system and destroyed, thereby

preventing plaintiff from having access to the courts.
Ms. Jones was also directly, or indirectly involved in delay
ing other pleadings to the sixth District Court in the case:
Jackson v. Utah, 6th Dist. Ct, case# 040600383 her actions re
sulted in plaintiff's case being dismissed. She also falsified documents.

4). Unknown named defendants at the Utah State Prison mail-
room Department:
  The defendant's acted under the color of state law, and with-
in the scope of their employment when at the behest of Ms.
Toni J. Jones, Assistant Utah Attorney General, intercepted,
copied, read, and destroyed plaintiff's pleadings to the
6th District court. The defendants have also intercepted, confis-
cated, and destroyed several other pleadings both in state and
federal courts, and to various other legal entities including
the U.S. Attorney General's Office, and the U.S. court of Appeals
for the Tenth Circuit.

5). Dr. Tubbs is an employee of the Utah Department of Corrections
Medical Department. Dr. Tubbs acted under the color of state law,
and within the scope of his employment when Dr. Tubbs denied
plaintiff adequate medical care for serious medical needs for both
diabetes mellitus, and for spinal injuries, and also head and
brain injuries. Dr. Tubbs also withheld pain management med
ication in retaliation for plaintiff's "negative behavior," and "giving
med techs problems." Plaintiff also asserts that Dr. Tubbs was either
directly, or indirectly involved in convincing medical specialists
to deny plaintiff surgical intervention with respect to spinal injuries,

and in denying plaintiff a consultation with a medical expert for diabetes.

6). Dr. Gardens, head of Utah State Prison's Medical Unit acted or omitted acts under the color of state law, and within the scope of his employment when he repeatedly denied plaintiff adequate medical treatment respecting plaintiff's spinal injuries, and plaintiff's diabetes. The denial of adequate medical care for diabetes has the effect of shortening plaintiff's life expectancy, and the denial of adequate "pain management" results in unnecessary pain and suffering, and deliberate indifference.

7). Unknown Named defendants at the University of Utah Medical center acted under the color of state law, and within the scope of their employment when they intentionally denied plaintiff the needed surgical intervention in both plaintiff's cervical spine, and lumbar spine. The Neurosurgical specialists also acted in a manner so as to refuse plaintiff medical care because plaintiff has previously filed medical malpractice against an employee of the Central Utah Correctional Facility. The defendants also allowed the medical officials to withhold "pain management". The defendant's acts and omissions also were deliberately indifferent after the state asserted complete control of plaintiff's medical treatment.

8). Defendants, David J. Angerhofer, P.C., and Wayne A. Freestone, P.C. acted under the color of state law, and within the scope of their

(m.3)

employment when then, as the Utah State Prison's Contract attorneys first denied plaintiff any legal assistance with respect to a State Habeas Corpus Petition. Because then refused plaintiff legal assistance, the (contract attorneys) denied plaintiff access to the courts, through legal assistance in the preparation and filing the habeas corpus petition, plaintiff was unable to comply with rules of criminal or civil procedure and plaintiff's Petition was denied in both State and federal court.

The Contract attorneys denied plaintiff assistance that would have made plaintiff able to effectively respond to the State's Martinez Report, which was used and contrived to dispose plaintiff's case of medical malpractice and constitutional rights violations.

The Contract attorneys also, having given the State's attorneys, (Utah Attorney General's Office an ex-parte document, (or Petition under Fed. R. Civ. Proc. Rule 68 a), allowing the state to get the case dismissed, and having knowledge that plaintiff had filed a grievance on the matter, was given petitioner's legal papers and legal materials to search for any evidence that may lead to their liability in the handling of plaintiff's ex parte pleadings. Finally, the contract attorneys intentionally held up plaintiff's Petition for a writ of Certiorari to the U.S. Supreme Court causing plaintiff's filing to be untimely.

9). Mr. Christopher D. Ballard, Assistant Utah Attorney General acted under the color of state law, and within the scope of his employment when he knowingly accepted plaintiff's pet item for a TRO and Injunction from the Prison's Contract attorneys and he knew he was in possession of legal documents that were questionable as to how they were handled by the Prison's Contract attorneys. Mr. Ballard contrived an objection, co mmingled the Petition for Rule 65a TRO and Injunction with a then pending §2254 Habeas Corpus writ thereby defe ating the petition he had not even been required by the Federal District Court to answer to. Mr. Ballard also intentionally lied to the tenth Circuit Court of Appeals with respect to how he aquired the documents. Mr. Ballard is also alleged to have directly, or indirectly, caused plaintiff's Motion for A Stay of the Habeas Petition (§2254) Pending Retu rn to State Court to exaust issues to be intercepted, confiscated and destroyed. Plaintiff could have, under the prevailing circum stances either exausted state issues, or at least take the issue of the stay to the U.S. Supreme Court.

10). Defendants, Lieutenant Farnsworth, and Captain Hughes acted under the color of state law, and within the scope of their employment when they first retaliated against plaintiff for plaintiff's confrontation with medical technicians, and Physician's Assistents regarding plaintiff's treatment for diabetes, and spinal injuries, (pain management).

Second, Captain Hughes, and Lieutenant Farnsworth, acting
(pg.5)

upon unfounded allegations of assault and battery which was also obviously racially motivated, then reduced plaintiff's security level and placed plaintiff in max. When plaintiff was found "not guilty", the defendants had the case worker, Mr. Bullock to contrive a reassessment that allowed them to keep plaintiff in max for over (14) fourteen months.

11) Third, Captain Hughes and Sergeant Ray and other unknown named employees staged a shake down of plaintiff's cell (in Quirch I), and produced a "shank", (crude knife-like weapon) and used it to again send plaintiff to max. These acts were done under the color of state law, and within the scope of their employment. These acts were also retaliatory for plaintiff's grievances alleging racial discrimination on the basis of race and disability, with respect to prison employment, and in housing decisions. These same individuals also confiscated legal papers.

12) The U.S.P. Warden, Steve Turley, acted under the color of state law, and within the scope of his employment when he denied plaintiff copies of legal documents when he knew the contract attorneys had been grieved by plaintiff, as plaintiff contemplated legal action against the contract attorneys, recieved plaintiff's legal papers for the purpose of the contract attorneys searching the papers. Thereafter, Mr. Turley held the legal papers for several additional months until the last document in the last of the various courts plaintiff had filings in was due. Mr. Turley maliciously and fraudulently withheld plaintiff's legal documents in contravention of Prison Policy.

13). Level II Grievance Official, Billie Casper, and level III Grievance Hearing Officer, Tom Anderson's omissions were done under the color of state law, and within the scope of their employment when Plaintiff raised the issues complained in this complaint but did nothing to correct them. The end result was and is unmitigated Constitutional rights violations.

14). Ms. Margret Brimhall, Assessment / Reassessment (security ratings), acted under the color of state law, and within the scope of her employment when plaintiff challenged the reassessment in 2008 which resulted in plaintiffs' (14) fourteen months stay in max.

15). Officer Sparks acted under the color of state law, and within the scope of her employment when she worked as housing staff in Uintah I. Ms. Sparks retaliated against plaintiff asked to be housed on the bottom tier consistent with a medical clearance. Ms. Sparks retaliated by insisting upon putting on a single pair of cuffs when plaintiff went to pill-line where the med. techs often gave incorrect doses of insulin even plunging the needle into plaintiffs' elbow. Ms. Sparks also confiscated several legal self help manuals, Utah law books, legal periodicals. In affect, she took every bit of legal materials plaintiff had and disposed of them before an objective determination could be made that she wrongfully deprived plaintiff of the property or not.

(pg. 7)

16). Unknown Named Prison Mailroom Officials acted under the color of State law, and within the scope of their employment when they confiscated many of Plaintiff's legal papers and pleadings forwarded to the various courts both state and federal, and always at a critical juncture of the proceedings. These officials violated plaintiff's Constitutional Amendments I & XIV and denied plaintiff access to the courts. Plaintiff suffered actual injury as many of the cases were lost because of the confiscation of the legal papers and pleadings, both criminal and federal.

17). Utah State Prison Transportation Officer acted under the color of state law, and within the scope of his employment when the Transport Officer, Smith subjected plaintiff to unnecessary pain and suffering, and denied plaintiff the benefit of a double-cuff clearance issued by the Prisons medical department. After Officer Smith refused to take plaintiff to the Prison's infirmary, and after plaintiff was forced to forego the follow-up visit to the ophthalmologist's required appointment and requested to be taken back forthwith to Prison in order to remove the cuffs, Officer Smith took as much time he could to prolong the agony I was obviously in. This act was especially cruel, and it was punishment merely because he could. Mr. Smith obviously enjoyed plaintiff's agony. The act was incredibly malicious and intentional so as to maximize the plaintiff's ordeal as long as legally possible.

18) . Sergeant, Healy, immediate Supervisor of Officer Smith, (Transport official) acted under the color of State law, and within the scope of her employment when she personally inspected Officers Smith's restraints which were in contravention of the medically issued "double-cuff" clearance. Sgt. Healy also attempted to deceive plaintiff into believing, even over the agony the restraints that they had applied the cuffs in accordance with the medical clearance. The Sergeant's actions were deliberately indifferent to plaintiffs pain and suffering in violation of The U.S. constitution Amendment VIII.

19) . Unknown named medical technician at the Utah State Prison's medical unit acted under the color of state law, and within the scope of his employment when he refused to either summon a physician who could issue a double-cuff clearance after it had allegedly expired, or verify to the transport official that the medical need for the double cuffing was still present. That medical technician was indifferent to plaintiff's pain and suffering and asked plaintiff to sign a "refusal of treatment".

20) . Unknown Named Prison Officials acted under the color of State law, and within the scope of their employment when they discriminated against plaintiff on the basis of race, and retaliated against plaintiff for filing grievances on the matter. These Officials also even sought out other black inmates to give select job positions to in response to my grievances, and actually

omitted a posting of a job position that pays the most mon
ey per hour for inmate employment so that plaintiff
would not apply.

21). Officer Ferry, Oquirrh II housing Official acted under the
color of state law, and within the scope of their employment
when he retaliated against petitioner when he went to
plaintiff's cell, and without any kind of search, confiscated
a radio in plaintiff's cell. Officer Ferry knew beforehand
that the radio had been sold to plaintiff before that inmate
paroled. Officer Ferry kept this knowledge for an opportunity
to retaliate against plaintiff. The opportunity presented
itself when plaintiff had a confrontation with medical technic
ian, and Physician's Assistants. Officer Ferry also particip
ated in excessive punishment was meted out to plaintiff
in a retaliatory manner.

§ 1983 Supplmental Sheet

COUNT I. Violations of The U.S. Constitution Amendments VIII, and XIV.

The plaintiff is an insulin dependent diabetic who has been in the Utah Department of Corrections Facilities since about 5-29-1999.

The plaintiff has had issues respecting plaintiff's diabetic condition since 1999, starting at the Uintah County Jail where State officials intentionally administered unprescribed and dangerous drugs, to wit: glyburide instead of the glipizide that was prescribed. The culmination of which caused petitioner to be admitted to the Columbia - Ashley Valley Medical Center where the fact of the administration of unprescribed drugs was discovered. This condition took place over approximately (4), four months.

After petitioner was sentenced to 15 years to life in the Utah State Prison, plaintiff soon discovered that the conditions were the same between the Uintah County Jail, and the Utah State Prison. The difference is, however, the State used the administration of unprescribed drugs in a coercive manner.

On or about August 28, 2001, plaintiff reported to AM pill-line to obtain an AM dose of insulin. Because plaintiff had previously sustained soft tissue damage to the left foot, causing gross swelling, and terrific pain, plaintiff was unable to comply with Prison's

(pg. 1)

dress code while at pill-line. Plaintiff would not place a shoe on the injured foot. The corridor officer ordered plaintiff back to the housing unit to put another shoe on. Plaintiff showed the official the extent of the injured and swelling foot, but the official was unsympathetic, and said, "if you can't put a shoe on, then you cannot obtain your medications", and ordered plaintiff back to the housing unit. When plaintiff arrived back at the housing unit, the housing officials also said that if I could not comply with the dress code that I could not go to pill-line for my medication, nor would they call the infirmary to have a medical technician bring the medication to the housing unit. That day I did not recieve my insulin. Plaintiff filed a Utah Rules of Civil Procedure Rule 65A Petition for a Preliminary Injunction. (In addition, plaintiff filed a Ut. R. C. P. Rule 65B Petition for Extraordinary Relief). On September 11, 2001, plaintiff was at a hearing on the Rule 65A Petition and the Third District Court granted the petition, and made it "permanent injunction" enjoining prison officials from denying plaintiff medical care for a serious medical condition. See: Exibit 1, (3rd Dist. rt. Ord., case # 010904240; entered: 9-12-01).

From about one week after the Third District Court's order, the State promptly violated the court order, and because the Third District Court was no longer interested in enforcing the court order, the State went on to violate the court order both with frequency, and with impunity. All plaintiff's efforts at enforcement were unsuccessful.

On or about November 3, 2002 a registered nurse, Ms. Lisa Soper

(pg, 2)

maliciously and intentionally denied plaintiff a prescribed dose of insulin. While protesting this treatment, plaintiff resolved that before taking another dose of insulin plaintiff should be allowed to consult with the physician at CUCF, or, Dr. Bruce Burnham so that the controversy could be resolved. The medical officials did not arrange for an appointment to consult with Dr. Burnham. Because plaintiff was not taking any insulin, plaintiff also stopped eating. On about day five, at approximately 3:am plaintiff went to the toilet to urinate. On the way back to the bunk plaintiff suddenly began to loose consciousness and fell. On the way down to the floor plaintiffs' face struck the metal stool that was embedded in the cement floor. The fall crushed plaintiffs' left cheek bone, fractured the left orbital socket, and the eye ball became entrapped into the fracture of the orbital socket, and the eye was forced back into plaintiffs' head, and below and below the left eye was cut.

The petitioner was then seen by the physician's who made a preliminary assessment that there was nothing wrong with my eye and declined to prescribed anything for pain, or to take any further actions with respect to the injury. Several days later, plaintiff was suffering nausea, dizziness, double vision, and throbbing pain in and around the left eye. Dr Bruce Burnham ordered x-rays and subsequent to a Orbital socket and facial fractures were brought into question; plaintiff was then transported to the Moran Eye Clinic for an appointment with an Ophthalmologist to confirm or eliminate the initial diagnosis. The Ophthalmologist ordered CT scans and MRI scans in preparation for surgical intervention,

(pg. 3)

This took place in about December 17, 2003. The plaintiff, however, did not obtain the surgical intervention required by the Ophthalmologist until March 19, 2004. See: Exibit 2; Univ. of Ut. Hosp. & Clin. Operative Repts.; Dr. Patel Bhupendra; dated: 3-19-04). The specialist explained to petitioner that the Utah State Prison had taken too long to get plaintiff into the Moran Eye Clinic for surgery, therefore plaintiff would not have full recovery but would have a permanent impairment with plaintiff's vision. See: Exibit 2; para. 1. During a post operative follow-up visit, it was discovered that the plaintiff had also developed glaucoma in the injured eye. See: Exibit 3(a), (Moran Eye Clin. Consul. Req. form; dated: 12-17-05; by Dr. Goldsmith, Oph.); and See: Exibit 3(b), (Ltr. from Moran Eye Clin. by: Dr. Goldsmith; re: provis. of meds admin; dated: 12-15-05). Additionally, petitioner began to experience significant pain, stiffness, headaches, dizziness, and numbness in the face. The Medical Department referred plaintiff to the University of Utah's Orthopedic Clinic for tests and diagnosis. See: Exibit 4, (Univ. of Ut. Hosp. & Clin. Consult. Rept., re: MRI Brain scan, and cervical spinal scan; date: 8-13-07; 3 pgs.). This report shows not only significant cervical spinal injuries, but also the presence of "white matter disease," which was notable as being attributed to "infectious, or inflamatory process," or prior trauma, or drug or toxic exposure, or with chronic migrane headaches." The plaintiff believes that this condition was brought on by the "prior trauma", (i.e., facial fracture, and chronic migrane headaches), both brought on by the facial injuries.

Prior to filing the instant lawsuit plaintiff exausted the Prisons

administrative remedies on the injuries. see: Exibit 5 (a), (Level
II Grie; ref. # 99G-08-53397; dated: 4-21-04; re: den, pre
scr, Insulin dose); and see Exibit 5(b), (Level III Griev. Resp, ref.
# 99G-08-53397; re: den, presc, insul. level and result injury).
The plaintiff also alleged the Prison Officials exibited deliberate
indifference for not getting petitioner into surgery in time for com
plete recovery. The denial of timely and adequate medical care result
ed in permanent impairment. see: Exibit 21 (Moran Eye Clin.
Operative Report; dated: 3-15-04).


COUNT II.


The State's Attorney f Jami J. Jones, Assistant Utah Attorney
General And Unknown Named Prison Officials Violated Plaintiffs
U.S. Constitution Amendment I And XIV Rights When They Con
fiscated And Destroyed Pleadings To The Sixth District Court In
Order To Cover-up The State's Failure To Timely Respond To
Petitioner's Summary Judgment Motion, And Engaged In Racial
Discrimination


On 11-7-04 plaintiff filed a complaint in The Sixth District
Court - Sanpete County - Manti, Utah. The complaint alleged medical
malpractice, and Constitutional Rights Violations.


The State filed a motion To Dismiss The complaint pursuant to
Ut. R. Civ. P. Rule 12 (b)(6), on: 2-16-05.


On 1-6-06, the Court entered a memorandum Decision dismiss

in part, and denying in part the State's Rule 12(b)(6) motion. see,
Exibit 6, (6th Dist. Ct. memo. Decis. & Ord.; case# 040600383; entered:
3-6-06. The court dismissed the medical malpractice against the
State of Utah, and also against defendant, Jerry Jorgensen, Warden,
CUCF, but the court found that a claim was stated against Ms. Lisa
Soper, R.N. with respect to the Eighth Amendment claim. The court
determined that Mr. Jerry Jorgensen was not even a party to this
lawsuit and dismissed any allegations against him. With respect to
Ms. Lisa Soper, R.N., the court found a claim was stated against
her. But, with respect to the State of Utah, the court adopted
the states argument that the state is not a "person" subject to suit
under 42 U.S.C. §1983." Exibit 6; pg. 7, para. (A), and dismissed
the Eighth Amendment claim against the state. Plaintiff also alleged
violations of state constitution, particularily Utah Constitution
Article I, Section 9. The court again dismisses Jerry Jorgensen as
a defendant to this action, but finds a claim stated against both
Lisa Soper, and the State of Utah. The court also allowed petit
ioner to amend the complaint, and instructed the state to answer
the amended complaint which they did on: 4-28-06. see: Exibit 9,
(6th Judi. Dist. Ct. Judint Roll & Index; case# 040600383; dated: 10-29-
07, pg. 2; at 4-28-06).


On 5-12-06, the state then filed a motion for Judgment on the
Pleadings. see: Exibit 9, pg. 2, at: 5-12-06). the state also moved
the court for a stay of Briefing on Plaintiffs Motion for Summary Judgment.
Additionally, the state prepared a proposed Order for the court to sign.
see: Exibit 8; (6th Dist. Ct. Ord. stay. Br. On Mot. Sum'ry Judint; case
# 040600383; entered 8-4-06). In this Order the state wrote, and the

court signed: "If the state's motion for judgment on The Pleadings is denied, then the state must file its memorandum opposing Plaintiff's Summary Judgment within Thirty days of The court's ruling."

On 9-28-06, the Sixth District court entered an Order dismissing the state's motion for Judgment on The Pleadings. See Exhibit 9, (6TH Dist. Ct. memo. Decir. & Ord. on Jud'mt on Pleadings; case # 040600383; entered: 9-28-06.

The time for the state to file an opposing memorandum to plaintiff's Motion for Summary Judgment began to run according to the court's Order staying Briefing on Plaintiff's Motion for Summary Judgment on 9-29-06. Exhibit 8. The thirty days would then lapse on 10-30-06. The state did not file a memorandum opposing Plaintiff's Motion for Summary Judgment.

When next The plaintiff heard from the state was on or about 11-10-06, where The state, by and through Mrs. Joni J. Jones, called plaintiff's housing unit and requested to speak to the plaintiff. Mrs. Jones offered a stipulation to some outstanding motions that was at That time before The court. The idea was in the interest of "jud icial economy", the parties could stipulate to the subject matter of The outstanding motions. When plaintiff agrees to The stipulation Mrs. Jones sent a legal assistant to obtain my signature on the proposed agreement. On or about 11-13-06 The plaintiff read the agreement and determined there was nothing in the agreement that was con Nter to plaintiff's interests, and thus signed the agreement because The agreement only applied to the motion to supplement the Plead

ings. After the agreement was signed the legal assistant tode the original back to the states counsel, Ms. Joni J. Jones, Ms. Jones immediately filed the agreement, and then sent a copy to me. The copy she sent me contained one more proviso, that being that the "state will not be required to respond to Jackson's motion for Summary Judgment, filed on or about June 8, 2006." see: Exibit 10, (Def. Joint mot. And stip. To Allow Limt'd Discry And Allow Pl. To Supp. Plead; (case #040600383; dated: 11-14-06).

    Immediately upon reciept of the signed copy of the Stipulation and agreement plaintiff wrote to the Sixth District Court and explained to the Judge, Wallace A. Lee, what had taken place, (that the State had attempted to coverup their failure to respond to the plaintiffs motion for summary Judgment by surreptitiously adding a proviso in the stipulation and agreement). The Sixth District Courts reaction was instead of signing and entering the agreement on the record the court instead entered a memorandum decision addressing the outstanding motions then before the court, thus obviating the Stipulation And Agreement, see: Exibit 11, (6th Dist. Ct. Memo. Decis.; case #040600383; entered: 12-13-06).

    Ms. Joni J. Jones then arranged, (ex-parte), for a conference between the parties with the Sixth District Court. The plaintiff was told about the conference late in the evening on the eve of the teleconference. Plaintiff had been heavily medicated with pain medication prescribed for headaches, cervical spinal and lumbar spinal injuries, and was unable to remember everything that needed to be said at the conference, especially the fact that the

state had failed to respond to the motion for Summary Judgment. The plaintiff did, however, explain to the court that the petitioner was preparing a motion to strike the stipulation and Agreement, and there address all concerns with respect to that fraudulent agreement. See: Exhibit 12 (Def. Trans. of Tele. Confer.; dated: 12-20-06; Transcribed: 1-22-07, pg. 3, para. 3 (highlighted). It is apparent that the state was trying to gain back what they lost, (opportunity to file an opposing memorandum to the plaintiff's summary Judgment motion), without any claim of excusable neglect.

The case took a turn for the worse for the plaintiff at this point of the telephone conference: Exibit 12, pg. 2, para. 3. The attorney for the state made this statement, in relevant part: "So my purpose here is certainly to not prevent Mr. Jackson from pursuing his claims, but I would like some sort of control over this case so that there aren't constant motions, et cetera that we're responding to." Although the court did not respond to that comment, the record shows that at this point the petitioner's pleadings were being confiscated, delayed, and otherwise destroyed.

The plaintiff completed the motion to strike and forwarded the original to the court, and a copy to the Utah Attorney General's Office. The original that was sent to the court disappeared in the Prison's mail system; but the state received their copy. See: Exibit 13, (Pl. mot. To strike Def's Mot & stip. W/ supp. memo, memo at pg. 4, and Throughout).

Plaintiff wrote to the trial court and requested a docket event statment,

and was surprised to find that the motion To strike had not been entered on the record. Plaintiff then wrote a letter to the Sixth District Court expressing my concerns that the state was actively intercepting, delaying, and otherwise destroying plaintiffs pleadings placed in the prison's mail system. There was no response from the court. see Exibit 14, (Pl. Ltr.; re: missing mot. To strike). The plaintiff also filed a grievance on the matter and exausted administrative remedies with unsatisfactory results. see: Exibit 15; (Level II Griev. Resp.; ref. #990863919; dated: 4-26-07).

Dispite the court's not recieving the original motion to strike, the Utah Attorney General's Office recieved theirs. The State responded with a memorandum In Opposition To Plaintiff's Motion To Strike Defendants' Joint motion And Stipulation And To Plaintiff's Motion To Compel Discovery, but in their arguments to the court, they carefully avoided all references to the fact that they did not respond to the plaintiff's motion for summary judgment. see: Exibit 16, (State's Memo. In Opp. To Pl's Mot To Strk Def's Joint Mot. & Stip.; dated; 1-22-07; entered on: 1-25-07). see: Exibit 4; pg. 4).

Because the state had told the court that they had provided the documents plaintiff had moved the court for an Order compelling Discovery, ms. Jones, Attorney for defendants had set of medical records hand delivered to plaintiff at the Utah State Prison, Draper, Utah site.

On 3-15-07, the State filed a motion Requesting that The State be allowed To File A Martinez Report And that all proceedings are

Stayed until the Martinez Report Is Filed," see: Exibit 17 (Def. mot. Req. To File Martinez Rept.; case# 040600383; entered: 3-15-07); and see: State's memo In Supp. Mot. File Mart's Rept.)

The Sixth District Court, in just thirteen days, and before pet itiner could file a memorandum, or other paper opposing the state's motion which was entered on: 3-28-07, Also, either the court, or Prison Officials delayed delivery of the state's pleadings thus the plaintiff did not recieve notice of the motion until almost a month after the state had filed their motion. See: Exibit 7, pg. 4, at: 4-27-07; and see: Exibit 18, (Pl. memo. In Opp. Def's mot. To File Mart'nz Rept.; dated: 4-5-07.

The State filed a motion to be allowed to file an overlength mem orandum on: 5-24-07, This prompted plaintiff to write another letter to the court see: Exibit 19 (Pl. Ltr. Dated: 5-27-07; re: Mart'nz Rept.) This letter shows the court was then completely unrespon sine to plaintiffs' inquiries, and responsive pleadings.

During the time just after recieving Notice of the state's motion for filing A Martinez Report, plaintiff made every attempt to gain information as to what a Martinez Report was, how it would affect me, and what pleadings I should file in response to the Martinez Report, Plaintiff attempted to obtain information from the contract attorneys, but they would give plaintiff little to no information. see: Exibit 20, (U.S.P. record of Atty visit; relevant date: 4-9-07. The plaintiff asked for a copy of the case: Martinez v. Aaron, 570 F.2d 317 in the hopes that the case was the progenitor

of the "Martinez Report". There was nothing to be gleaned from that decision that would prepare one to effectively respond to nor to defeat the Martinez Report. The Prison's Contract Attorneys were no help whatsoever in preparing to meet the Martinez Report. see: Exibit 21, (U.S.P. Atty. memo; dated: 4-12-07).

The court, on July 3, 2007, entered a memorandum Decision granting the State's motion for Summary Judgment. see: Exibit 22 (6th Dist. Ct. memo. Decis.; case # 040600383; entered: 7-3-07).

ON 7-30-07, within the (5) five days specified by the defendants' Notice of a right to object to the Martinez Report procedure, and summary Judgment; plaintiff filed the objection. see: Exibit 23 (Pl. Obj To Sum'ry Judm't Ord.; dated: 7-30-07; case # 040600383).

The State had given plaintiff enough medical records subsequent to the teleconference of 12-20-06. Starting at pg. 10, the plaintiff introduced the evidence that the state had provided that directly refuted the assertions and averments in the Martinez Report. The plaintiff presented reasons why plaintiff should be granted the reconsideration requested, but the court denied the motion without comment on the merits of the motion for reconsideration, on the evidence that refuted the State's Martinez Report. see: Exibit 24 (Pl. memo. In Supp. mot. Reconsid. of Ct's Decis. on Martinz Rept; entered: 10-1-07).

Equal Protection Violation

The State, by and through it's counsel, Ms. Joni J. Jones vid-
ated plaintiffs' U.S. Constitution Amendment XIV (equal protection
of the laws clause when she, Ms. Jones submitted to the sixth
District Court a digital photo (prison photo), and a docum-
ent showing the crime for which I am presently serving time
for. This allegation arises from the Martinez Report and attach-
ed Affidavit of Officer Austin Smith; UDC Transportation
Officer, attached hereto as Exibit 25, pg. 2), at (11), Exibit 2.
See herein; Exibit 26 (a) thru 26 (g), (UDC Transport Ord.; dated:
2-28-06, and see: Exibit 26 (c) (UDC Digital Photo Pris. I.D.)
The Transportation Order, with the crime for which plaintiff is
incarcerated is set forth in the upper left corner of the document
in Exibit 26 (a). The state also included a computer generated
photo I.D. These documents were not necessary to make their
argument respecting the complaint that prison officials inflicted
unnecessary pain and suffering in the transport procedures they
applied to plaintiff despite the medical history of shoulder injuries
for which there was a medical clearance was provided for dou-
ble-cuff restraint. The photo was to demonstrate my ethnicity,
and the transportation order demonstrated the crime for which
I plead guilty to.

The same result, (the court becoming prejudiced toward plaintiff
when the plaintiff's ethnicity, and crime of conviction is reveal-
ed in a Utah court of record), when in September 11, 2001, at the
Third District Court, at a hearing on a Ut. R. Civ. P. Rule 65B,
and subsequent Rule 65A. See: Jackson v. Friel, 3rd Dist. Ct. #010
904240; (this case was later filed in the U.S. District Court; see:

Jackson v. Friel, U.S.D.C. # 2:03-CV-533 DAK. In this case, when plaintiff was present at the Third District Court on the Rule 65A Petition, The Judge, Timothy Hansen was taken aback because my writing was not indicative of what my ethnicity is. The judge questioned the petitioner as to the crime for which petitioner was incarcerated, and when he was told, the plaintiff's case was then scuddled. Also the State's counsel, Ms. Sharel Reber made references to both plaintiff's race, and crime of conviction to obtain the same results. Yet another Assistant Attorney General engaged in the same conduct, and obtained the same result. see: Exibit 27 (a), (State's Objec. To Pet. For Temp. Restr. Ord. & Injunct.; by: Chr istopher D. Ballard, Asst. Atty Gen.; Jackson v. Friel, U.S.D.C. # 2:05-CV-365 DB; pg. 1, and Exibit 27 (b), Jackson v. Friel, U.S.D.C.-UT, # 2:05-CV-365 DB; State's Obj. To Pet. Mot. For Ord. Req. Pris. To Prov. Appa. W/ Legal papers; glasses, and honor med. Clearance; dated: 5-22-08; pg. 2, para. 1). In fact, it has been all about my race, (black), and about my status, (sex offender), and was from the inception of the prosecution, about race and status, and was then put in graphic and overt terms. see: Ex ibit 28, (Aff.d. of Steven Shane Tingey; dated: 2-26-01.

The State, by and through it's counsel, Ms. Jeni Ji Jones violated plaintiff's U.S. Constitution Amendment I, (righ to petition the government for redress of grievances), when she either directly or indirectly ordered plaintiff's pleadings taken from the Prison's mail system for purposes of preventing plaintiff from raising the issue of the state not timely filing an opposing memorandum

to plaintiffs motion for summary Judgment.

The State of Utah by and through it's counsel, Mrs. Jani J. Jones, Assistant Utah Attorney General, violated plaintiffs' U.S. Constitution Amendment XIV (due process) rights when they, (Prison mail room Officials), Jani J. Jones, Assistant Attorney General, and other unknown named individuals delayed plaintiffs' pleadings from reaching the courts to respond to state's motions and martinez Report. This conduct violated not only plaintiffs' constitutional Amendment I right to petition the government for redress of grievances, but also substantive due process under the U.S. Constitution Amendment XIV (due process clause, other referred to as denial of access to the courts.

## Equal Protection

The state's actions also violated the U.S. Constitution Amendment XIV (equal protection of the laws clause), in that other U.S. citizens, (those at large), are relatively unobstructed in filing the same types of complaints.

## COUNT III

Violations of The U.S. Constitution Amendment VIII (cruel and unusual punishment; and Deliberate Indifference); violations of The U.S. Constitution Amendment XIV (Denial of the Privileges And Immunities Clause); and Violations Of The Americans With Disabilities Act. Also violation of U.S. Constitution

Amendment XIV (due process and Equal Protection of the Laws Clauses).

The plaintiff, in 1990 injured the lumbar spine, (herniated disc), following an accident while at work on a County Road project. The plaintiff recieved a lamenectomy inwhich was performed by Dr. Paul Turner, of Pecos Neurosurgical Service of Roswell, New Mexico In about 6-1990.

In about 8-10-06, plaintiff recieved an x-ray for diagnostic purposes to determine the source of persistent, and debilitating pain. See: Exibit 29 (Schryver Med. Sales & Marketing, Inc. Diag. Lumbar spinal x-ray; dated: 8-10-06). To Obtain a more detailed image of the affected area, and to confirm initial diagnosis, the University Of Utah Neurosurgery Ordered a magnetic Resonance Imaging, (MRI). See: Exibit 30 (UMC Neuro. Surj Diag, dated: 8-11-06). On 8-11-06, an MRI was obtained and a more detailed diagnosis was made. see: Exibit 3) U. OU. Hosp. & Clid., Consul.; Exam; (MRI of The Lumbar spine); dated; 8-11-06, 2 pgs).

It was determined at a later date that plaintiff was," not a candidate for surgery, dispite the myriad of problems identified in the previous diagnosis of the lumbar spine. see: Exibit 3e, (Neuro Surgery; Umc, Consul, dated: 1-24-08). This document Shows that the Neurosurgical Clinic recommended Surgery; but later determined that plaintiff was "not a candidate for surgery". Plaint iff asserts that the reason for the above determination was be (001/14)

cause of a prior lawsuit for medical malpractice and constitut ional rights violations. As noted on Exibit 32, the consultant recommended "pain management."

In addition to the severe lumber spinal condition, plaintiff's cervical spine was almost equal and identical condition. See Exibit 33, (U. of U. Hosp. & Clin.; consul.; dated: 8-13-07; re: cerv. spine). The most recent MRI shows that the cond ition with the cervical spine have progressed. see: Exibit 34 (A) (U. of U Health Care Provider Rept.; re: MRI c. spine; dated: 10-26-09); and Exibit 34 (b), (U. of U. Health care Rept.; re: c. spine MRI; dated: 10-26-09). Yet, the Utah State Prison pre scribed (4) four 50 mg Tramadol tablets pier day for pain, and Amitryptaline; and Gabapentin. These medications have been inefective alone to control the pain, and has often caused immobility. The Prison's medical Department, on many occasions have neglected refilling these prescriptions, thus ca using withdrawal symptoms from most of these drugs without any apparent cause. see: Exibit 35 (U.D.C. level I Griev.; ref. # 9908-63-457; dated: 12-28-06), and see: Exibit 36, (U.D.C. level II Griev. & Resp.; ref # 990868313; Also; same ref. # level III Resp.; dated: 8-27-08), and see: Exibit 37, (level I Griev. & Resp.; ref.# 9908-65-684; dated: 7-27-07; re: failure to refill Rx, addictive meds); and see: Exibit 38 (level I Griev.; ref # 9908-65-355; dated: 7-23-07); and Exibit 39 (level I griev. Resp; ref # 9908-63-951; re: renew pain meds; dated: 3-20-07; and Exibit 40 ( M. Track Note, re: withdrawal symptoms; dated: 11-26-06.

These grievances were concerning inadequate "pain management," and neglect in refilling physically addictive pain medication. Whenever I confronted medical personnel respecting the provisions of "pain management," Prison Officials would become enraged, and then accuse plaintiff of "checking medications," with no evidence whatsoever. The Physician, Dr. Tubbs said that all the medical technicians had to do was make the accusation and that was sufficient to prompt medical officials to "discontinue" my medications.

The medical department's medical staff would use the pain medications and the withholding of them as a means of retaliation. see: Exibit #1, (level III Griev. Resp.; ref. # 990867311; see also Exibit 42, (level III Griev. Resp.; ref. # 990866946; dated 6-10-08; re: discontinuance of RX (pain meds)). At issue in this grievance, I had a confrontation with a med. Tech. respecting my treatment and he accused me of "checking medications," when I had actually choked while swallowing seven or eight pills and capsules the medication I coughed back up were high blood pressure medication, but the med. tech. first refused to take them back as proof of what was coughed up, and then had plaintiff written up for "checking medication. see: Exibit 43, (UDC med. Dept.; M-Track entry; dated; 11-01-07); see also Exibit 44 (level I Griev. Ref. # 990869016; dated; 7-4-08; re: confron. w/ medi. tech. Matt). After the medical technician, Matt managed to get my pain medications discontinued.

Then, plaintiff met with a Physician's Assistant, Raymond Merrill

(pg. 18)

regarding the allegations of "diverting medication". Mr. Merrill then told plaintiff he would restore the prescriptions for pain. This meeting took place on: 12-10-07. The Physician's Assistant stressed the importance of letting the medical Technicians know that plaintiff had taken the medication. see: Exibit 44 (U.D.C. m-Track medical rec.; 12-10-07). Plaintiff restarted the prescription and within a month the prescription was again discontinued for no apparent reason. When plaintiff inquired of medical personnel they said that there had been an allegation of plaintiff again "diverting medication." This allegation though was made by an anonymous accuser, and there was no formal, or informal action taken such as a major disciplinary write up, except to again discontinue the medication. see: Exibit 42 (level III Griev. Resp.; ref.# 990866946; date; 6-10-08), and see also: Exibit 45, (level I Griev.; ref.# 990869010; date 7-4-08; 3 pgs). A Dr. Tubbs then agreed to renew the prescription dispite the anonymous entry in the m-track. see: Exibit 46, (level II Griev. Resp.; ref.# 990868068; dated; 5-29-08; para. 3. Dr. Tubbs did, however show what the real purpose for the anonymous medical records entry was for; it was because I had been regarded as giving the medical technicians "problems". For the official response from the Chief Executive Officer of Utah Department of Correction's Designee, Mr. Mike Haddon's Response to a GRAMA Appeal referencing the matter, see: Exibit 47, (GRAMA Appeal; by Mike Haddon, Deputy Director, U.D.C.; dated; 2-12-08; pg. 2, para; 4.

The next issue of contention was access to adequate medical care for plaintiff's diabetic condition.

(pg. 19)

The plaintiff has been incarcerated since 1998. Plaintiff has had issues with the state purposely and adversely affecting plaintiff's diabetic condition. see: Exibit 48 (Mattei Companies, Libty Ins. Serv. Notice of Denial of Claim; by Mike Cerf, Libty Ins. Serv.; dated: 2-26-99). The medical records underlying the claims belie the Insurance Company's determination both factually, and medically, but plaintiff has been denied access to these records. They are made unavailable because plaintiff has asserted that the administration of the unprescribed drug was the product of official coercion.

When plaintiff was committed to the Utah State Prison, conditions were equally egregious, and violative of the U.S. constitutions Amendment VIII, and also the Americans with Disabilities Act (ADA) of 1990, and U.S. Constitutions Amendment VIII. The Prison was required by a pre-existing consent decree to provide "special diets" for those requiring them, but they did not exist at the Prison then, and still don't. This omission caused petitioner to struggle with volitile, and unstable blood sugar levels, especially hypoglycemia, (excessively low blood sugar levels). This is a condition that is not only debilitating, but it could cause catastropic health problems, including permanent loss of brain cells, respiratory failure, "altered mental status, (AMS); coma, and death. see: Exibit 49 (Art. from; Discry Magazine, 8-02, two pgs); Then see; Exibit 50 (Art. from; medicinsult.com Print out date: 11-30-98; oral diab. meds).

In about August 26, 2001, plaintiff went to the Prison's
(pg. 37)

medical pill-line to obtain a prescribed dose of insulin, (plaintiff was on oral medications prior to incarceration, but later was placed on insulin, Regular Insulin, (fast acting), and Humulin MPH Insulin, (intermediate acting)). At that same point in time plaintiff had a foot injury with gross swelling and was thus unable to put on a shoe on that left foot. The corrider official ordered plaintiff to return to the housing unit to put on a shoe, thus complying with the Prison's dress code. When plaintiff showed the official the foot injury that was grossly swollen, and very, very painful, but the corrider officer was unpersuaded, and said that if I did not put a shoe on, I could not obtain my medications. The housing officials agreed with the corrider officer, and also declined to call a medical technician to the housing unit. I did not recieve any insulin, or other medications. Plaintiff had already filed a Utah Rules of Civil Procedure Rule 65B Extraord inary Relief Petition, plaintiff then, after the denial of med ication for a serious medical need, filed a Ut. R. Civ. P, Rule 65 A Petition for a Preliminary Injunction.

On September 11, 2001, plaintiff was heard in the Third District Court on the Rule 65 A Petition. The Judge granted the Rule 65 A Preliminary Injunction, and further made it perman ent. see: Exibit 1, (3rd Dist. Ct. Ord.; #010904240; entered: 9-12-01), see also: Exibit 52 (3rd Dist ct. Dock. Evt. Statmt, at pg. 3).

The state promptly violated the injunction when a medical tech

nician refuse to give me insulin because my bloodsugar lev
els was too low at the evening pill-line, but promised that
after the evening meal I would then be given insulin. Alth
ough housing officials contacted the medical unit later that
evening the medical officials said that I could just wait until
the next day to recieve my next dose of insulin in direct violat
ion of both the letter and the spirit of the injunction. See: Exibit
5-z (3rd Dist. Ct. Dock. Evt. ht#int # 610504240, at pg. 5-6;
Notices of Intent). The Prison violated the injunction sev
eral times with impunity dispite my every effort at enf
orcement of the injunction.

        Then, while plaintiff was being housed at the central Utah
Correctional Facility, (CUCF), medical officials refused plaintiff
a prescribed dose of insulin, thus violating the court order,
plaintiff refused to take the other (lesser) dose, other than
what was prescribed, and plaintiff requested to consult with the
Physician, and access to the healthcare provider was withheld until
plaintiff had suddenly lost consciousness in plaintiff's cell, fell and
struck my face and head on a metal stool embedded in cement caus
ing severe injury which required surgical intervention, and result
ed in permanent impairment and disfigurement primarily because
Prison officials did not get plaintiff into surgery in time to obtain
"one hundred percent recovery". See: Exibit 6; (6th Dist. Ct. Memo.
Decis. Case # 040600383; pg. 10, para. 3). Plaintiff subsequently filed
a complaint for medical malpractice and constitutional rights viol
ations. See: Exibit 6. The plaintiff is still pursuing a legal remedy
because the state would not allow plaintiff to enforce my civil and

constitutional rights in state courts. For more detail on this issue see:
Argument I supra.

The violations of the court order still did not stop with the filing of
the complaint for medical malpractice and constitutional rights vio
lations. As the plaintiff explained to the U.S. District court in a Fed.
R. Civ. Proc. Rule 65a Petition, plaintiff's diabetes had been out of
control (at least (8), eight out of (11), eleven years of my incarcer
ation. see: Exhibit 53 (Pet. for Temp. Restr. Ord. & Injunc. Rule
65a; pg. 6-7).

Because plaintiff's diabetic condition was grossly out of control
due to an absence of a "diabetic diet," and because the plaintiff's ph
ysical condition, (lumbar & cervical spinal injuries), and because
the conditions of plaintiff's conditions of confinement changed when
plaintiff was wrongfully placed in the Uintah housing Unit, (maximum
security unit), plaintiff requested medical department to adjust my
insulin to compensate for the limitations set forth above. see: Exhib
it 54; (letter to Dr. Gardens head of U.S.P. medical unit; dated:
4-24-07; re: req. for consult w/ diabetes specialist). On 4-27-07,
Dr. Gardens wrote a UDC/DIO Clinical Serv. memorandum in resp
onse to my letter. see: Exhibit 55, (UDC/DIO Clin. Serv. memo. dated:
4-24-07). Dr. Gardens essentially refuses to arrange for a consultation
with a specialist on diabetes mellitus. Dr. Gardens stated that: "A sp
eciality clinic appointment is only made when requested by a medical
provider and approved by our utilization review committee. Also, if the
medical provider feels it would be appropriate, you may be seen in our ch
ronic care clinic."

(pg. 33)

ronic care clinic."

Plaintiff filed a grievance on the matter, and exausted administrative remedies on the matter. see: Exibit 56 (a), (level III Griev. Resp.; ref # 990864478; dated: 7-23-07). The level III hearing Official stated: "There is no evidence in the record, and you have provided NONE, that would convince a reasonable person you are not recieving adequate medical treatment for your medical conditions, including diabetes. You have provided no information or evidence that you have suffered harm from inadequate treatment." But during the same period of time, i.e., during the period of time for the Utah State Prison's Grievance process takes to exaust, I was recieving indications from other medical staff, (in this instance, a Registered Nurse in charge of chronic care, (including diabetics, and hypertension, ect.), that were contrary to Dr Garden's conclusions both that I was recieving appropriate responses to my healthcare requests, (HCR), see: Exibit 55; and that there is no evidence that plaintiff recieved inadequate healthcare, or that there has been no evidence that plaintiff "has not suffered harm." Exibit 56 (b), (level III Griev. Resp.; Ref. # 9908 64478; dated 7-23-07)), the chronic care Nurse, Nancy, wrote several Private Clinical Services forms informing plaintiff of the (A1C) test results; see: Exibit 56 (c) (Info. med. Art. regarding (A1C) test proc; note dating the test to Jan. 07). The same was true in 2008. see: Exibit 57 (a), (Ut. State Prison Clin. Serv. Form, re: (A1C) test results. see comments of this form); and see: Exib it 57 (b) (Info. Reg. (A1C) test proc. dating from Jan. 08 to 4.08).

In the year 2008, plaintiff was relatively stable with respect
(pg. 24)

to my diabetic condition. Prison Officials in the Oquirrh II housing Un
it wrongfully, and with discrimination and retaliation, placed plaintiff
in the Uintah facilities, (maximum security), thus substantially al
tering plaintiffs' conditions of confinement with atleast twenty-
one hours per day lockdown. The result was that because of
(21) hour lockdown in exceedingly small cells, plaintiff made sever[al]
earnest requests for adequate medical care for the treatment of my
diabetes, but was denied at every administrative level. see: Ex
ibit 58 (a) (level I Griev.; ref. # 990868768; dated: 5-20-08).
This issue was also exausted administratively. see: Exibit 58
(b) (level II Griev. App.; ref. # 990868768; re: refusal of adeq.
med. care; dated: 8-10-08); Then see: Exibit 58 (c) (level III Griev.
Resp., ref. # 990868768, re: req. for adeq. med. Treatment; dated: 9-
23-08). Another grievance, which was also given a reference num
ber of 990868768 was responded to by the level III hearing Officer.
see: Exibit 58 (d), (level III Griev. App.; ref. # 990868768; dated: 9-23-08).

    The plaintiff made several more grievances on this matter, but the
medical Department made every attempt to make it appear on paper,
atleast, that the problem was with me making unreasonable requests
for a "prescribed amount of insulin. see: Exibit 59, (level I griev.;
ref. # 990868826; re: prescr. dose of insulin denial; dated: 6-19-08).
But, the real reasons for the refusals, which were malicious because
any medical technician could readily determine if an existing prescr
iption was current or not. In a level II Grievance Response which
addressed three grievances at once because they were of a common
thread, the real reasons for my not recieving these requests for a
"prescribed dose of insulin," was because unbeknownst to me, the
(pg. 20)

prescriptions had run out, and no one in the medical department would make me aware of this fact. see: Exibit 60 (level II Griev. resp; ref. #(5): 990868768; 990886875; and 990868876; re: "prescr. insul; dated: 7-31-08). This instance was not an isolated incident, it has been played out enumerable amounts of times. see: Ex'sit 61, (level II Griev. Resp, ref #990864478; re: prescr. dose of insul; dated: 6-15-07); and see: Exibit 62 (level I Griev. Resp; ref. #990868768; re: prescr. dose insul; dated: 7-1-08. In a level II grievance by plaintiff, plaintiff cited a case that provided for a consent decree that made specific references to chronic illness, including diabetes mellitus, and how they would be treated at the Utah State Prison. The medical department was less than indifferent to the citation of Henry v. Deland, U.S.D.C. Ut.; Case # 89-c-1124J. see: Exibit 63 (level I griev. ref. #990868875; dated; 7-12-08). The above discribed acts and omissions also violated both the spirit and letter of the plaintiffs' consent order. see: Exibit 1 (3rd Dist. Ct.; case #010904240; entered; 5-12-01).


Although the medical unit eventually changed my prescription to be responsive to my changed conditions of confinement, (from general population to maximum security, 21 hours lockdown), and plaintiff's A1C levels went from 10.8 percent to 6.8 percent in a period of about (6), six months. (note: 6.0 is regarded to be ideal for the plaintiff, but the assertion made in Exibit 56 (2) that: "You have provided no information or evidence that you have suffered harm from inadequate treatment), is patently untrue for the Prison has the evidence in their records.

The medical record shows that my bloodsugar levels were unsafe by predominate standards, and the prison's own Chronic Care Nurse, Ms. Nancy was explicit in her assessment of my medical condition during that point in time, see Exhibit 56 (a). But nerve damage is only one complication that threatens the health and even the life of a diabetic who has sustained excessively high bloodsugar levels. One is at risk of literally life or limb. Nurse Nancy took the time to explain to plaintiff the cumulative and irreversible effects of excessively high bloodsugar levels. My understanding prompts me to think of it in terms of a "full cup theory"; each day of uncontrolled bloodsugar levels is like unto a corresponding drop of water in a cup. You have a very finite amount of time before your cup begins to over flow. In this instance, only so long before one begins to suffer diabetic complications like diabetic retinopathy; amputation of feet and legs, kidney failure, heart failure, and a host of other serious complications including death. Nurse Nancy counseled that even if I were to suddenly get back on track and start taking very good care of my bloodsugar levels, the damage that was done when the condition was uncontrolled one could never reverse. The effects are truly cumulative, and there has been harm to substantially reduce my life expectancy, and or quality of life, after nearly (10) years of uncontrolled diabetes mellitus.


Unnecessary delay In Renewing And Refilling Medications For A Serious Medical Condition.


When the plaintiff was injured in the allegations in count one